UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY R. COTTON,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
_____/

Case No. 1:14-cv-900

HON. JANET T. NEFF

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Tony Cotton seeks review of the Commissioner's decision denying his claim for disability benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits,

and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was born on December 24, 1963. (A.R. 47). He was 50 years old on the date of the Administrative Law Judge's (ALJ) decision. (A.R. 9). He completed one year of college. (A.R. 96–97). Plaintiff previously was employed as a case aide, shipping and receiving clerk, label press operator, material handler, gypsum plant monitor and laborer, furniture assembly worker, machine operator, hi-lo driver, and security guard. (A.R. 28–29). Plaintiff applied for DIB on November 20, 2011, alleging a disability onset date of March 27, 2007. (A.R. 222). In plaintiff's

application, plaintiff complained of pain in both his knees, back pain, left hip replacement, carpal tunnel syndrome in both wrists, tennis elbow, depression, acid reflux, glaucoma, anxiety, high blood pressure, high cholesterol, sleep apnea, and insomnia. (A.R. 222). His application was denied on May 2, 2012. (A.R. 235).

Plaintiff thereafter engaged in a lengthy administrative process that began by seeking review before an ALJ. After conducting an administrative hearing, ALJ James Prothro issued a written decision, dated August 17, 2012, in which he found plaintiff was not disabled. (A.R. 236–50). The Appeals Council, however, remanded the case on November 11, 2012, for further consideration on a number of issues. (A.R. 256–59). On June 7, 2013, ALJ Prothro again issued a decision finding plaintiff not to be disabled. (A.R. 261–84). That decision was also remanded by the Appeals Council on October 25, 2013. (A.R. 285–88). On remand, the case was heard by ALJ Donna Grit. An administrative hearing was conducted on February 5, 2014 in which both plaintiff and a vocational expert (VE) testified. (A.R. 40–91). On March 14, 2014, ALJ Grit issued her written decision in which she determined plaintiff was not disabled. (A.R. 9–31). The Appeals Council declined to review the ALJ's decision on June 18, 2014, making it the Commissioner's final decision. (A.R. 1–6). Plaintiff's thereafter initiated this action, seeking review of the Commissioner's decision.

Plaintiff's insured status expired on December 31, 2012. (A.R. 15, 222); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

# ALJ'S DECISION

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). To aid ALJs in applying the above standard, the Commissioner of Social Security has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five step sequential process" for claims of disability. First [a] plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, [a] plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if [a] plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, [a] plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, [a] plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that [the] plaintiff can perform, plaintiff is not disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520(a-f).

The plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

4

ALJ Grit determined plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity from March 27, 2007, through his date last insured. (A.R. 15). Second, the ALJ determined that plaintiff had the severe impairments of: (1) status post remote (1984) left femur fracture and hip replacement; (2) sleep apnea; (3) left lower extremity meralgia paresthesia; (4) history of bilateral epicondylitis with a small spur on the left elbow; (5) bilateral carpal tunnel syndrome; (6) degenerative joint disease of the bilateral knees; (7) degenerative disc disease of the lumbar spine; (8) history of alcohol abuse; and (9) depression. (A.R. 15). At the third step, the ALJ considered whether plaintiff met a listed impairment and found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (A.R. 16–19).

At the fourth step, the ALJ considered plaintiff's residual functional capacity (RFC) and determined that through plaintiff's date last insured, he had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except: he is able to stand or walk at least two hours in an eight hour workday, and sit six out of eight hours; no use of foot controls with the left lower extremity; use of a cane for extended walking (defined as 200 yards); can occasionally balance and climb ramps and stairs; never climb ladders, ropes, or scaffolds; never stoop, kneel, crouch, or crawl; frequently handle with the left upper extremity; must avoid all exposure to hazards such as unprotected heights and dangerous machinery; have occasional public contact and is unable to do a fast-paced job or work with production quotas.

(A.R. 19). Continuing with step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (A.R. 28–29).

At the fifth step, the ALJ used the VE's testimony from the administrative hearing to determine whether a significant number of jobs exist in the economy which plaintiff could

perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 4,400 jobs in the State of Michigan and 85,000 national jobs which a person similar to plaintiff could perform, such limitations notwithstanding. (A.R. 85–86). The VE testified that this work included jobs as a production worker, inspector, and machine operator tender (A.R. 85–86). This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Thus, following the five steps, the ALJ determined plaintiff was not disabled within the meaning of the Act.

**ANALYSIS**

Plaintiff's statement of errors presents the following claims:

1. The ALJ committed reversible error by finding a residual functional capacity (RFC) for Plaintiff without support in the Record.

2. The ALJ did not have substantial evidence to support her finding that Plaintiff could have performed light work.

3. The ALJ committed reversible error by failing to follow applicable Social Security Regulations.

4. The ALJ committed reversible error by failing to give appropriate deference to the decisions of the Veteran's Administration (VA) in this case and by failing to give appropriate weight to the evidence.

(Dkt. #11, PageID 1845). The Court will discuss the issues below.

**A.     RFC**

Plaintiff argues the ALJ's determination that plaintiff had the RFC to perform light work is unsupported by substantial evidence. Plaintiff contends this is because the VE testified there were only sedentary jobs which plaintiff could perform, and plaintiff was required to ambulate with a cane.

6

RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Harris v. Comm'r*, 598 F. App'x 355, 358 n.4 (6th Cir. 2015); *Griffeth v. Comm'r*, 217 F. App'x 425, 429 (6th Cir.2007). A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). An RFC for light work involves, in part, "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). An ability to perform light work generally includes an ability to perform sedentary work. *Id.*

At the administrative hearing, the VE identified only sedentary jobs as jobs which plaintiff would be able to perform. (A.R. 85). Plaintiff argues that the ALJ thus erred in finding plaintiff had the RFC to perform light work. (Dkt. #11, PageID 1846–47). If there were no light jobs that he could perform, plaintiff reasons, his RFC should properly be sedentary.[1] The Sixth Circuit has previously discussed this issue. In a case similar to this one, the claimant argued that a VE's testimony that found only sedentary jobs for the claimant should have led the ALJ to determine the claimant had only a RFC for sedentary work. As the Sixth Circuit put it, however:

> That is not how the system operates. The RFC is based on the claimant's particular disabilities, an inquiry wholly independent from what jobs are available in the regional and national economy. *See* 20 C.F.R. § 404.1545(a) (listing factors that determine an RFC). The VE does not testify as to what the claimant is physically capable of doing, but rather as to what jobs are available, given the claimant's physical capabilities. Thus, in a step-five

---

[1]An RFC for sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

7

> analysis, the VE's testimony depends upon the RFC and not the other way around.

*Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 36 (6th Cir. 2010). The Sixth Circuit went on to favorably quote a district court decision which stated: "It is a non sequitur to argue that because plaintiff suffered conditions that limited her job base essentially to sedentary jobs, the ALJ erred in concluding that plaintiff was able to perform a limited range of light work." *Id.* (quoting *Johnson v. Barnhart*, 2005 WL 3271953 at *14 (W.D. Wisc. Nov. 29, 2005)). The Court agrees. The VE's testimony that plaintiff could perform sedentary jobs has no bearing on the ALJ's decision at step four that plaintiff had the RFC to perform light work.

Plaintiff next claims that because the RFC found plaintiff would require the assistance of a hand-held device (here a cane) for ambulating further than two hundred yards, the RFC of light work is unsupported by substantial evidence. Plaintiff relies on *Love v. Comm'r of Soc. Sec.,* 605 F. Supp. 2d 893 (W.D. Mich. 2009) for support. In that case, the court found an RFC which limited a plaintiff to light work and further required a "hand-held assistive device" for the plaintiff to ambulate was not supported by substantial evidence. The court determined the ALJ did not explain how the plaintiff in that case would be able to both use the required hand-held device and also carry weights corresponding with an RFC for light work. *Id.* at 907; *see also* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). The instant case, however, is distinguishable because unlike the claimant in *Love*, here the RFC for plaintiff only requires a cane for walking further than 200 yards. Moreover, the ALJ, in explaining the RFC, cited to physician opinions that stated plaintiff would be able to use a hand-held device to ambulate as well as carry weights. For example, the ALJ gave "great weight" to the opinion of Dr. Dinesh Tanna who opined that plaintiff

8

could lift and carry weights consistent with the C.F.R.'s definition of light work. (A.R. 26). The doctor opined plaintiff required the use of a hand-held device to ambulate, but could occasionally lift and/or carry twenty pounds, and could frequently lift and/or carry ten pounds. (A.R. 1322). Dr. Tanna's opinion is consistent with the opinion of Dr. Geoghegan, also cited by the ALJ, who noted that plaintiff would need the assistance of a cane, but could carry ten pounds frequently, up to twenty pounds occasionally, and even up to fifty pounds occasionally. (A.R. 26, 1830–31). In sum, the "illogic" that concerned the *Love* court, is not present here. *Love*, 605 F.Supp.2d at 907.

**B.     Step 5**

Plaintiff next claims the ALJ erred at step five in the sequential evaluation by using the grids to determine that plaintiff was not disabled. The error, plaintiff reasons, is that his non-exertional limitations preclude his performance of a full range of work at a given level, thus the application of the grids is inappropriate. (Dkt. #13, PageID 1862) (*citing Jordan v. Commissioner of Social Security*, 548 F.3d 417 (6th Cir. 2008)). The error in *Jordan* however, was not that the ALJ mentioned the grids, but rather that the ALJ relied solely on the grids, leaving plaintiff's non-exertional limitations unaddressed. *Id.* 424. Such was not the case here. In this case, the ALJ noted that plaintiff had additional, non-exertional limitations, and thus consulted a VE who testified that plaintiff would be able to perform a significant number of jobs. (A.R. 30). The grids are a shortcut that eliminate the need for calling in vocational experts. *Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988). Here, the ALJ properly determined the short-cut did not apply and properly consulted the opinion of a VE. In this, the Court discerns no error.

## C. Veterans Affairs

On April 3, 2008, the Department of Veterans Affairs issued a decision on Plaintiff's claim for service-related disability benefits. (Tr. 676–78). Based largely on plaintiff's sleep apnea symptoms, the Department of Veterans Affairs determined that plaintiff suffered a sixty percent service connected disability. (Tr. 678). Plaintiff argues that the ALJ failed to properly consider the department's determination.

As the ALJ correctly observed, however, the determination by the Department of Veterans Affairs is not binding on the Social Security Administration. As the relevant regulation provides:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504; *see also, Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x, 508, 510 (6th Cir. Oct. 4, 2013) (decisions by the Department of Veterans Affairs are not binding on the Social Security Administration; such are entitled to consideration, but no particular weight).

The ALJ considered the decision by the Department of Veterans Affairs, but found such unpersuasive and entitled to little weight. (A.R. 25). The ALJ noted that the decision was inconsistent with a prior disability determination by the department and that the decision did not explain the inconsistency. (A.R. 25). The ALJ further found plaintiff had only minimal treatment for his sleep apnea, and that it appeared to be controlled. This, the ALJ, determined, was at odds with the VA's heavy reliance on sleep apnea for the disability determination. (A.R. 25). In sum,

the Court finds that the ALJ adequately considered the decision by the Department of Veterans Affairs. Accordingly, plaintiff's argument is rejected.

Plaintiff separately claims the ALJ's treatment of the opinion evidence which afforded great weight to the opinions of non-examining physicians and less weight to plaintiff's physicians at the Department of Veterans Affairs is contrary to the Sixth Circuit's ruling in *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375–76 (6th Cir. 2013). However, plaintiff mischaracterizes the case. *Gayheart* gives an overview of the process an ALJ is to take when evaluating medical opinion testimony. First, it describes the general hierarchy of weight given to different sources of medical testimony: the testimony of a treating physician is generally given more weight than that of an examining physician, and the testimony of an examining physician is given more weight than that of a non-examining physician. *Gayheart*, 710 F.3d at 375.

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Id*. (citing 20 C.F.R. § 404.1527(c)(2)). However, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Id*. at 376. *Gayheart* does not, therefore, stand for the proposition that an ALJ may not give greater weight to the opinion of a non-examining source when a treating physician has given an opinion, as plaintiff claims. Rather, *Gayheart* affirms that the ALJ must "give good reasons" for giving less than controlling weight to a treating source's opinion. *Id.* at 376.

Nor does the fact that the non-examining physicians may have given their opinions before further development of the record require that their opinions be given less weight. An ALJ is not precluded from relying on an opinion that did not consider the complete medical record if the ALJ gives "some indication that [he] at least considered [the additional evidence] before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3). Here, the ALJ considered the entire medical record. (A.R. 13) ("After careful consideration of all the evidence . . . claimant was not under a disability); *see also* A.R. 16, 39 (discussing Exhibit 30F, the most recent portion of the medical record).

Accordingly, plaintiff's claim is denied.

## **CONCLUSION**

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.

Dated: January 7, 2016                    /s/ Janet T. Neff
                                                                                   JANET T. NEFF
                                                                                   United States District Judge